UNITES STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH TACOPINA,

                *Plaintiff*,

         – against –                    Index No. 14-cv--8379 (PAC)

MICHAEL O'KEEFFE, DAILY NEWS, L.P.,
and TIMOTHY C. PARLATORE, ESQ.,      **DECLARATION OF JUDD BURSTEIN**

                *Defendants*.
------------------------------------------------------------X

        **JUDD BURSTEIN**, hereby declares under penalty of perjury:

        1.    I am a principal of Judd Burstein, P.C., attorneys for Plaintiff Joseph Tacopina ("Plaintiff") in this action.

        2.    I submit this Declaration in support of Plaintiff's and my opposition to Defendant Timothy C. Parlatore's ("Defendant" or "Mr. Parlatore") motion for sanctions in this action.

        3.    The purpose of this Declaration is two-fold. **First**, I will address Defendant's regrettable effort to tar me with completely unfair and, frankly, dishonest accusations that have absolutely nothing to do with his Rule 11 motion, because the conduct that Defendant complains of never found its way into a signed document submitted to a Court. **Second**, I will discuss the allegations in the Amended Complaint to demonstrate that the allegations are not sanctionable. (A true and accurate copy of the Amended Complaint is attached as Exhibit A hereto.)

## DEFENDANT'S IRRELEVANT AND MISLEADING ALLEGATIONS ABOUT ME

        4.    At the outset, and as discussed in the accompanying Memorandum of Law, I note that Mr. Parlatore's complaints about my out-of-court conduct should not even be considered because they are supported by a document that is incompetent for its purposes. Specifically, Mr.

Parlatore has submitted a purported "Affirmation" which in fact is in the form of an affidavit that is not notarized. There is no provision for the submissions of affirmations in federal court, and, in any event, CPLR 2106(a) makes clear that, in the New York State Courts, an attorney may not submit an affirmation when he is, as here, a party. Nor can the document submitted by Defendant be considered a Declaration pursuant to 28. U.S.C. § 1746, because it does not contain words substantially equivalent to "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."

5.  Notwithstanding the fact that Mr. Parlatore has failed to lay a proper foundation for his entirely irrelevant complaints about me, I am going to respond substantively to them in order to ensure that the Court does not give credence to Mr. Parlatore's accusations. In doing so, I will be required to harshly criticize Mr. Parlatore. I would prefer not to do so, but he has left me no option.

6.  Before turning to Defendant's specific complaints, some context is needed. While I suppose that I have a reputation as a tough litigator, no lawyer or court -- other than Mr. Parlatore -- has ever accused me of dishonesty.[1] Moreover, I almost always enjoy cordial relations with opposing counsel. I believe that Mr. Leish, counsel for the other Defendants in this case, will agree that he and I have dealt with each other as professionals without any rancor. My view of the practice of law is that I should be able to fight hard all day in court, and then go out for a drink with my adversary at the end of the day. It is therefore not surprisng that a

---

[1] Indeed, even in *Revson v. Cinque*, 70 F.Supp.2d 415 (S.D.N.Y. 1999) (Chin, D.J.), *rev'd* 221 F.3d 71 (2nd Cir. 2000), Judge Chin went out of his way to state that I had not engaged in any dishonest conduct. 70 F.Supp.2d at 422, 433, n.8. Significantly, as shown by a letter from Judge Chin, Judge Chin does not believe that my conduct 16 years ago in *Revson* should be of any moment in another case. (A true and accurate copy of the May 26, 2004 letter from Judge Chin is attached as Exhibit B hereto.)

significant percentage of my practice is derived from referrals by lawyers who have opposed me in cases.

7. But there are exceptions to my general practice of cordiality. I grew up in a family where my mother and sister were judges and my father was a lawyer. I was taught to respect the courts and the legal system. When an adversary is dishonest, or plays fast and loose with the facts and the law, I do my best to restrain myself because I know that Judges do not appreciate lawyers who engage in spats with each other. However, there are circumstances in which I try to take steps out of court in an effort to impose some restraint on the part of my adversary. That is what happened here.

8. It is also important to recognize that, with the exception of a May 15, 2014 letter I sent to the Assistant United States Attorneys who prosecuted Mr. Kerik (discussed below), all of the conduct about which Mr. Parlatore complains took place in November of 2014. (*See* Exhibits B-H of the "January 9, 2015 "Affirmation" of Timothy C. Parlatore ("Parlatore Aff.")) As I demonstrate below, prior to that point, I had exercised the patience of Job in the face of extraordinarily offensive, dishonest, and disrespectful behavior on the part of Mr. Parlatore. Indeed, in my 30-plus years of practicing law, Mr. Parlatore is the most irresponsible, reckless, and dishonest adversary I have ever encountered -- qualities that are enhanced by his shoddy research. As described below, his conduct has been shameless. For example, he had the gall to claim in a memorandum of law submitted in *Kerik v. Tacopina*, 14-cv-02374 (JGK) (S.D.N.Y.) ("Kerik I"), that I had personally engaged in a pattern of racketeering activity.

9. The events that led to some of the conduct complained of by Mr. Parlatore started even before he filed his Notice of Appearance in Kerik I in May of 2014. From the moment that the case was filed, and even before it, Mr. Tacopina was subjected to an endless barrage of

3

negative, and wildly slanted and dishonest New York Daily News articles, mostly written by Michael O'Keeffe, a defendant herein. These articles are detailed in Paragraphs 7-17 of the Amended Complaint filed in this case.

10.   I was personally outraged by the initial Complaint against Mr. Tacopina, both because Mr. Tacopina is a friend of mine, and I therefore did not believe the allegations, and because it so clearly demonstrated that Mr. Kerik was lying either (a) when he pleaded guilty under oath, or (b) when he filed the sworn complaint. (A true and accurate copy of the Verified Complaint in *Kerik v. Tacopina et al.,* No. 14-00488 (D.N.J.) is attached as Exhibit C hereto.) In his guilty plea allocution, Mr. Kerik plainly stated that he was pleading guilty because he was in fact guilty. (*See, e.g.* a true and accurate copy of the November 5, 2009 transcript of Kerik's guilty plea allocution attached as Exhibit D hereto, at p. 41.) Yet, in his **verified** complaint, Mr. Kerik swore that his guilty plea was the result of misconduct by Mr. Tacopina. (*See, e.g.,* Exhibit C hereto at ¶ 66.) Because I was so outraged, I wrote to the Assistant United States Attorneys to disclose Kerik's perjury, and asked that he be prosecuted. (Exhibit A to Parlatore Aff.) I did not do so because I wanted to gain an advantage in the litigation against Mr. Kerik,[2]

---

[2]   Mr. Parlatore has consistently focused on the first sentence of my letter, which states: "I know that lawyers in civil litigations often try to convince prosecutors to pursue criminal cases against an opposing party, and the purpose of this letter is to do just that." Yet that sentence was just a recognition of what I know happens in the real world. More importantly, though, Mr. Parlatore has consistently failed to acknowledge that the rest of the letter, read in context, makes clear that I was intent upon vindicating a much broader principle:

> This case is different... Mr. Kerik has made a mockery of the oath he took when he pled guilty by filing the enclosed **sworn** Complaint in the Malpractice Case.
>
> * * *
>
> Mr. Kerik is not just another convicted felon who failed to learn any lessons from his conviction. Rather, he is a public figure who constantly makes use of his extensive access to the media. If, as he is doing now, he publicly thumbs his nose at the system and his misconduct is then ignored by prosecutors, your Office necessarily loses credibility. People such as Bernard Kerik must be held accountable when they
> (continued...)

4

but because I found Mr. Kerik's conduct so loathsome. In any event, even if part of my motive was to advance Mr. Tacopina's cause (which it was not), my letter was not remotely a violation of Rule 3.4(e) of the New York Rules of Professional Responsibility, because it plainly was not sent "**solely** to advance an advantage in a civil matter." (Emphasis supplied).

11. In May of 2014, Mr. Parlatore arrived on the scene, and the attacks went into high gear. On May 27, 2014, the day of a scheduled conference before Judge Koeltl, Parlatore filed an Amended Complaint in Kerik I alleging breach of fiduciary duty and defamation. (A true and accurate copy of the Amended Verified Complaint in Kerik I is attached as Exhibit E hereto.) But he did not just file the Amended Complaint. He also called a press conference which led to a Daily News article that began with the following lead: "Sex lies and audiotape -- all three figure into the escalating war between ... Bernard Kerik and ... Joe Tacopina." (A true and accurate copy of the May 27, 2014 Daily News Artcile is attached as Exhibit F hereto). During the press conference, as reported by the Daily News, Mr. Parlatore gratuitously stated: "This shows it was Tacopina who has been lying all along.... It's time for him to stop lying."

12. The Amended Complaint that Mr. Parlatore filed was utterly incompetent. It failed, *inter alia*, (a) to grasp basic principles of the statute of limitations for breach of fiduciary duty in New York, (b) the fact that, under New York law, breach of fiduciary duty claims against a lawyer are deemed to be malpractice claims which cannot be won by a former criminal defendant unless his conviction is overturned, (c) to allege Constitutional malice -- even though Mr. Parlatore is plainly a public figure, and (d) to distinguish between claims of defamation *per*

---

[2](...continued)
    engage in conduct that, one way or the other, deserves at least an investigation by your Office.

(Exhibit A to Parlatore Aff.) (Emphasis in original)

*se* and other defamation claims which require allegations of special damages that must be pled with particularity.

13. On May 27, 2014, Mr. Parlatore and I appeared before Judge Koeltl.[3] I had asked for the conference in part because I had made a Rule 11 sanctions motion addressed to the initial Complaint and now wanted to file a Rule 12(b)(6) motion. (A true and accurate copy of the Defendant's Motion for Sanction is attached as Exhibit G hereto.) However, Judge Koeltl expressed his strong view that he does not favor sanctions motions or hostility between counsel, and I acceded to his preference by abandoning that motion. At the same time, I identified all of the deficiencies in Mr. Parlatore's Amended Complaint. At this point, Judge Koeltl asked Mr. Paraltore whether he would seek permission to replead if I succeeded in my motion. When Mr. Parlatore said he would seek to amend, Judge Koeltl instead gave him permission to file one last Amended Complaint which I could then seek to dismiss.

14. One would think that, after having heard my criticisms of his Amended Complaint and reading my sanctions motion[4], Mr. Parlatore would have used his time spent preparing a Second Amended Complaint in an attempt to cure the deficiencies I had detailed in Court and in the sanctions motion. Instead, he used the time granted to him to file a Second Amended Complaint on June 3, 2014, which added an entirely incompetent and frivolous RICO claim, but ignored all of my prior criticisms and essentially just repeated his prior Amended Complaint's breach of fiduciary duty and defamation claims. (A true and accurate copy of the Second Amended Complaint is attached as Exhibit H hereto.) Moreover, the Second Amended complaint was littered with entirely irrelevant allegations about Mr. Tacopina supposedly

---

[3] I have just learned that my office did not order the transcript of this conference. However, we will do so and submit it to the Court once we have received it.

[4] Although the sanctions motion was addressed to the initial Complaint in Kerik I, the arguments therein were equally applicable to the First Amended Complaint that Parlatore filed.

engaging in extramarital affairs and abusing prescription drugs while representing a defendant in a murder case

15. The reason for these allegations became clear shortly after the filing of the Second Amended Complaint in Kerik I. As alleged in Paragraph 28 of the Amended Complaint in this case, Mr. Parlatore undoubtedly leaked it to the Daily News in advance of filing so that it was able to report on a 34 page document just 45 minutes after it was filed. The salacious but irrelevant allegations in the Amended Complaint allowed the Daily News to write a story with the following lead: "It was a full-service firm: extortion, drug abuse, betrayal, fraud, extramarital affairs — even racketeering.... Celebrity attorney Joseph Tacopina did it all...." (A true and accurate copy of the June 3, 2014 Daily News Article is attached as Exhibit I hereto.)

16. But Mr. Parlatore's insatiable desire for publicity then continued with an article the very next day:

> Bernard Kerik has a message for fellow former clients of celebrity attorney Joe Tacopina:
>
> If you saw something, say something.
>
> **Tim Parlatore, an attorney for the one-time NYPD commissioner, issued a press release Thursday encouraging "anybody who feels they have been a victim" of Tacopina to contact Parlatore and potentially join Kerik in his escalating legal war against the legal powerhouse. Parlatore has created an email address for such complaints....**

(A true and accurate copy of the June 5, 2014 Daily News Article attached as Exhibit J hereto.) (Emphasis supplied). This bizarre attempt to drum up business on Mr. Tacopina's back came very close to a violation of Rule 7.3 of the Rules of Professional Responsibility, but I was not sure enough about the issue to conclude that I had a reporting obligation. My only response, which I had an obligation to give in order to protect my client, was to tell a Daily News reporter that the press release was a "'cheap publicity stunt,'" and that Mr. Parlatore was "'trying to milk

7

his 15 minutes of fame.'" This was a response that was plainly permitted by Rule 3.6(d) of the Rules of Professional Responsibility.

17. On June 10, 2014, I filed a motion to dismiss the Second Amended Complaint in Kerik I. (A true and accurate copy of Defendant's Memorandum of Law in Support of His Motion to Dismiss the Second Amended Complaint in Kerik I is attached as Exhibit K hereto.) I note that, despite Mr. Parlatore's outrageous conduct as of that date, and the disgraceful, sensationalized allegations in the document, I held my fire and did not personally attack Mr. Parlatore in my motion.[5]

18. Mr. Parlatore, however, took a different approach in his answering papers (a true and accurate copy of the Memorandum of Law in Opposition to Defendant's Motion to Dismiss is attached as Exhibit L hereto), choosing to launch wholly inappropriate personal broadsides against me in an unsworn Memorandum of Law:

   a. After stating that "Defendant's Motion to dismiss is purely an emotional outburst," Mr. Parlatore dropped a footnote stating: "Defendant's attorney, Judd Burstein, **who is well known for his bullying tactics**, appears to have become very personally emotionally invested in this case." (*Id.*, at 1, n.1) (Emphasis supplied);

   b. "Plaintiff, and his attorneys have been subjected to numerous threats by Tacopina **and his counsel, Judd Burstein**." (*Id.*, at 5);

   c. "Plaintiff is alleging that Defendant Tacopina, the person, and others known and unknown (including **Mr. Burstein), engaged in a pattern of racketeering activity on behalf of the Enterprise**." (*Id.*, at 4-5) (Emphasis supplied);

---

[5] The motion was successful, as Judge Koeltl dismissed the entire Complaint. *See Kerik v. Tacopina*, ___ F.Supp.2d ___, 2014 WL 6791615 (S.D.N.Y. 2014).

8

  d. "The Enterprise extends beyond the strictures of the corporate structure of Tacopina, Seigel, & Turano, PC, to include other associated entities and individuals, **like Mr. Burstein**." (*Id.*, at 5) (Emphasis supplied);

  e. Not having done the research needed, Mr. Parlatore claimed that the statute of limitations did not bar Kerik's RICO claim by relying upon *United States v. Eppolito and Caracappa*, 543 F.3d 25 (2d Cir.2007) -- a case that deals only with the different statute of limitations applicable in **criminal** RICO cases. Putting aside the fact that the limitations period in civil cases is four years, *see Koch v. Christies Int'l, PLC*, 699 F.3d 141, 148 (2d Cir. 2012), Mr. Parlatore doubled down on this gross legal error by stating "what is particularly instructive about the *Caracappa* decision is that it makes abundantly clear that counsel for the Defendant personally knew that this was a failing argument. **Judd Burstein cannot claim ignorance of the *Caracappa* decision, as he ... testified as a Government witness, just as his client did in the case at bar**. (*Id.*, at 5-6) (Emphasis supplied);[6]

  f. After citing to *Hardy v. Kaszynski & Sons Contractors*, 870 F.Supp. 489, 494 (S.D.N.Y. 1994), Mr. Parlatore then went on to make the wholly irrelevant

---

[6] Putting aside the absurdity that I would be aware of an appellate decision in a case in which I served only as a fact witness, Mr. Parlatore was falsely claiming that I had testified against my own client, just as Mr. Tacopina had allegedly done. In fact, I testified in support of a former client by providing evidence of his prior consistent statement. So the record is clear, and as the Government will confirm, when I heard the defendants in the case had been indicted, I was almost sure that my former client, Burton Kaplan, had become a Government witness. At this stage of my career, and given my clientele, the last thing I wanted to do was find myself embroiled in a Mafia trial relating to events that had transpired 20 years earlier. Nonetheless, I reached out to the Government to say that I assumed that Mr. Kaplan was a prosecution witness and, if so, I might be of assistance assuming that Mr. Kaplan waived his privilege. As it turned out, Mr. Kaplan had already done so.

9

statement that "**Judd Burstein represented the prevailing party in this action**." (*Id.*, at 10) (Emphasis supplied);

g. "**Judd Burstein is an experienced attorney and his attempt to hide behind false claims of a sophomoric mistake are unworthy of belief**." (*Id.*, at 20) (Emphasis supplied).[7]

19. The upshot of Mr. Parlatore's scandalous submission was a Daily News article which highlighted the outrageous allegations of racketeering that Mr. Parlatore had made against me: "Kerik attorney **Tim Parlatore also names Judd Burstein, Tacopina's lawyer, as a co-conspirator in one of the racketeering charges detailed in Kerik's complaint**." (A true and accurate copy of the June 20, 2014 Daily News article is attached as Exhibit M hereto.) (Emphasis supplied). Needless to say, this unfair, negative publicity was very upsetting to my family, and caused a number of my clients to call me for an explanation.

20. On June 24, 2014, I filed a Reply Memorandum of Law in Support of Mr. Tacopina's motion to dismiss the Second Amended Complaint. (A true and accurate copy of the Defendant's Reply Memorandum of Law in Support of Motion to Dismiss is attached as Exhibit N hereto.) Notably, even after the Daily News article, I again held my fire because I was committed to litigating the case on the merits.

21. On October 16, 2014, Judge Koeltl heard oral argument on the motion to dismiss. (A true and accurate copy of the October 16, 2014 hearing transcript is attached as Exhibit O hereto.) While I did express great and legitimate displeasure about Mr. Parlatore's attacks upon

---

[7] I ask the Court to read Mr. Parlatore's Memorandum to see how disrespectful and intemperate it is.

10

me (*id.*, at 3-4), Judge Koeltl made a point of saying that "you took to heart what I said at the last conference" about litigating the case only on the facts and the law. (*Id.*, at 4)[8]

22.  At about the same time of the oral argument, and as alleged in the Amended Complaint, Mr. Parlatore engaged in shockingly unprofessional conduct by filing an *ex parte* application for a temporary restraining order based upon a supposed fear that Mr. Tacopina was fleeing the country and dissipating assets, and then publicizing the application to the Daily News before the TRO was entered.

23.  Worse still, as described in pages 1-2 of Plaintiff's Memorandum of Law in opposition to Mr. Parlatore's motion to dismiss the Amended complaint in this case, Mr. Parlatore flat out lied to the Court in what we have denominated in other submissions as the Doe Action on the crucial issue of whether he sent copies of the submissions to the Daily News in that case before or after the case was commenced.

24.  This then brings us to the November 2014 exchanges between Mr. Parlatore and myself about which he complains. I am not going to bother with Mr. Parlatore's misleading quotes from various documents that he sets forth on Page 8 of his Memorandum of Law. If the Court reads the emails attached to his motion, it can see that they are taken out of context. However, I do want to put the events leading up to Exhibit B to Mr. Parlatore's "Affirmation" in their proper time line:

    a.  On the morning of November 7, 2014, I received an email from an attorney and old friend, Jeffrey Lichtman, stating: "Nice website." (A true and accurate copy of the November 7, 2014 email from Mr. Lichtman is atached as Exhibit Q hereto.) I thought he was talking about my firm's website when I called him

---

[8] Exhibit P hereto is a true and accurate copy of a June 24, 2014 letter from Assistant United States Attorneys Perry A Carbone and Elliott B. Jacobson, to Hon. Loretta A. Preska that is referenced in the accompanying Memorandum of Law in opposition to the sanctions motion.

11

        back. Mr. Lichtman was laughing and telling me that I needed to "optimize it" on Google. I had no idea what he was talking about until he explained that he was talking about the blog of which Mr. Parlatore has complained. I finally convinced Mr. Lichtman that I had nothing to do with it.[9]

    b.    On November 11, 2014, Mr. Parlatore sent me an email stating: "It has come to my attention that you or someone acting on your behalf, has created a defamatory blog dedicated to me. Please have this removed immediately." (Exhibit D to Parlatore Aff. at 4) The claim was untrue because, even today, Mr. Parlatore does not know who is behind the blog.

    c.    I quickly responded by telling Mr. Parlatore that I had nothing to do with the blog, explaining what had transpired with Mr. Lichtman -- who I did not mention by name. I also told Mr. Parlatore that "[i]f you want to agree at your expense, to have someone we mutually trust to undertake an investigation of whether I played any role in the blog, please do so." (*Id.*, at 3)

    d.    Notwithstanding my denial of involvement in the blog and my offer to have someone investigate the issue, Mr. Parlatore then responded by, in essence, calling me a liar: "I would like to investigate your role. I'm sure you will have no objection to sending a subpoena for the subscriber's info?" (*Id.*)

    e.    It was at this point, after having been accused of lying about the blog, and Mr. Parlatore was floating the ridiculous idea of issuing a subpoena when there was no pending proceeding in which it could be issued, that I wrote the email that Mr. Parlatore has found so troubling. (*Id.*, at 1-2) In light of what Mr. Parlatore had

---

[9] I also note that I took steps to assure myself that no one associated with Mr. Tacopina was behind the blog. I am prepared to show the Court relevant documents *in camera*.

12

done over the past few months -- including claiming that I was a racketeer and publicizing it in the Daily News for the world to see, I decided to have some fun with him and write a satirical email that I knew many of my friends and colleagues would enjoy. One of the people to whom I sent it was Richard Johnson, a New York Post columnist. Mr. Johnson is an old friend of mine, and I was not sending it to him to have it published in the Post. Had I wanted that, I could have just called him. Instead, it was Mr. Johnson who told me that he wanted to do a story on the email because he found it "hilarious."

25. To be clear, I do not have and have never had anything to do with the blog. Rather, I thought that Mr. Parlatore was acting in an offensive manner; I resented being told that I was a liar; I was offended that someone would think I would be part of a blog that is written so poorly; and I decided that I was going to have fun at Mr. Parlatore's expense in light of his shameless conduct to date. But I certainly never submitted my email to the Court as a statement of fact pursuant to my Rule 11 obligations.

26. As for the other emails about which Mr. Parlatore complains, they are all appropriate advocacy communications that I would have sent to Mr. Parlatore's counsel if he had retained one. He cannot fairly complain about being offended or upset by them because he does not want to spend money on a lawyer.

**MY FACTUAL BASIS FOR THE ALLEGATIONS IN PARAGRAPHS 21-24 OF THE COMPLAINT**

27. I now provide the factual basis for the allegations in the Amended Complaint that Mr. Parlatore contends are sanctionable.

28. Paragraph 21 alleges that Mr. Parlatore was "an attorney so desperate to become a 'somebody' that he was prepared to say or do anything if it would get his name into the Daily

13

News." The short answer here is that the conduct by Mr. Parlatore that is alleged above and in the Amended Complaint provide more than enough of a factual basis for this allegation. Moreover, I have been a lawyer in New York for over 30 years, and, frankly, know who the "somebodies" are. Mr. Parlatore is not one of them. Further, once all of this publicity began, I received numerous calls from other attorneys asking me, in words and substance, "who is this guy?" Finally, multiple criminal defense lawyers called me and expressed their views that Mr. Parlatore was "incompetent," a "blowhard who goes to pieces in the courtroom," an "idiot," or a "liar."[10]

29. Mr. Parlatore complains about the allegation in Paragraph 22 of the Amended Complaint that (a) he had been fired by one or more respected New York criminal defense attorneys due to his incompetence, and (b) that he was so unsuccessful in his effort to develop a law practice that his landlord filed an action seeking to evict him from his apartment for the non-payment of $7,018.54 in rent and electric bill arrearages. With respect to the claim that Mr. Parlatore has been fired for incompetence, I am prepared to provide the sources of that information to the Court *in camera*, as it would be unfair to those sources to put them in an uncomfortable situation for such a pointless reason. As for the claim about the eviction action, I attach a true and accurate copy of the pleadings of the eviction action as Exhibit R hereto.

30. Turning to Paragraph 23 of the Amended Complaint: In response, I attach Exhibits S and T hereto. Exhibit S is a true and accurate copy of a web print-out from the Virginia State Court system showing that Mr. Parlatore was arrested as Timothy Payne on a misdemeanor charge on May 23, 2005, and pled guilty to that charge in July of 2005. Exhibit T

---

[10]   I have not named these criminal defense lawyers because it would unfairly embroil them in this case based on confidential, friendly conversations with me. As noted, I have been practicing law in this Court for more than 30 years without any suggestion of dishonesty. My sworn word on this should be sufficient. However, if the Court wants more information, I am prepared to disclose the names of these attorneys *in camera*.

is a true and accurate copy of records obtained from the Circuit Court of Virginia City showing that Mr. Parlatore (a) sought to change his name from Payne to Parlatore just two days after he was arrested, and (b) the application was granted the next day. These facts are more than sufficient to plead, on information and belief, that "Parlatore engaged in this subterfuge so that he could hide his criminal record going forward." Why else would he seek to change his name so suddenly after his arrest, and why would he then plead guilty under a name that was no longer his name?

31. Plaintiff also complains about the allegation in Paragraph 24 of the Amended Complaint that the Daily News directly or indirectly paid for his trip to Normandy. My experience is that people are almost always paid for their published work, and I assumed that Mr. Parlatore was not working for free. Moreover, this allegation has to be put in the context of the unholy alliance between Mr. Parlatore and the Daily News as alleged in the Amended Complaint. The sudden appearance of an article by Mr. Parlatore at the same time that the Daily News was using Mr. Parlatore to further its effort to destroy Mr. Tacopina led me to the reasonable conclusion that Mr. Parlatore was being compensated in some way for the article.

## ADDITIONAL EXHIBITS

32. The following Exhibits are additionally relevant to this opposition and referenced in the accompanying Memorandum of Law:

   a. Exhibit U hereto is a true and accurate copy of a *New York Law Journal* Article by Joel Stashenko from December 4, 2014, titled "Court Tosses Kerik's Suit Against His Former Lawyer."

   b. Exhibit V hereto is a true and accurate copy of Mr. Parlatore's Rule 11 Notices of Motion and accompanying letters.

c. Exhibit W hereto is a true and accurate copy of Tacopina's Memorandum of Law in Support of his Opposition to Defendant Timothy C. Parlatore's Motion to Dismiss the Amended Complaint, filed in this case on February 9, 2015.

d. Exhibit X hereto is a true and accurate copy of a November 3, 2014 email that I sent to Mr. Parlatore offering to withdraw various allegations contained in Plaintiff's Amended Complaint in this action if he provided various evidence relating to those allegations. Mr. Parlatore did not provide the evidence in question.

e. Exhibit Y hereto is a true and accurate copy of: (1) an email Timothy Parlatore sent to Michael O'Keeffe at 1:08 p.m. on October 14, 2014, and (2) the December 17, 2014 Reply Affirmation of Timothy C. Parlatore filed in further support of Plaintiff's Motion to Dismiss Defendants' Counterclaims in *Jane Doe v. Tacopina Seigel & Turano, PC,* Index No. 160100/2014 (Sup. Ct. N.Y. Cty. 2014) (Kenney, J.S.C.). Mr. Parlatore's October 14, 2014 email confirms that the documents sent to Mr. O'Keeffe were not the final documents filed with the Court in *Jane Doe v. Tacopina Seigel & Turano, PC* because (a) the subject line of the email is "**Draft Papers**," (emphasis supplied), and (b) the names of the files sent (*e.g.,* "Complaint v5.docx") showed that they were versions of the documents that were later to be filed. As for the December 14 Reply Affirmation, Paragraphs 4 and 5 thereto show that **at best**, Mr. Parlatore has no idea whether he provided Michael O'Keeffe a copy of the Complaint and TRO Application in that case prior to or after they were presented to the *Ex Parte* Office.

**WHEREFORE**, for the foregoing reasons, your Declarant prays for an Order denying Defendant's motion for sanctions, together with such other and further relief as this Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on February 9, 2015.

_____
Judd Burstein (JB-9585)