UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

JOSEPH TACOPINA,                               :
                                               :
                        Plaintiff,             :
                                               :
        -against-                              :
                                               :        14 Civ. 8379 (PAC)
                                               :
MICHAEL O'KEEFFE, DAILY NEWS, L.P.,            :
and TIMOTHY C. PARLATORE,                       :        **OPINION & ORDER**
                                               :
                        Defendants.            :
------------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: September 4, 2015

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Joseph Tacopina sues Defendants Daily News, L.P. and one of its reporters,

Michael O'Keeffe, for defamation, and Defendant Timothy Parlatore, an attorney who has sued

plaintiff on behalf of several clients, for defamation and abuse of process.[1]

Defendants move to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P.

12(b)(6), for failure to state a claim.  Defendant Parlatore also moves for sanctions against

Plaintiff and Plaintiff's attorney, Judd Burstein.

Defendants' motions to dismiss are GRANTED.  Defendant Parlatore's motion for

sanctions is DENIED.

## BACKGROUND[2]

Joseph Tacopina is an attorney who in 2013 represented New York Yankees Third

Baseman Alex Rodriguez, in connection with Rodriguez's suspension from Major League

Baseball ("MLB").  Am. Compl. ¶¶ 7, 9-10.  Michael O'Keeffe, a reporter for the Daily News,

---

[1] Jurisdiction is proper under 28 U.S.C. § 1332 because there is diversity of citizenship.
[2] The statements in the Background section are based on the allegations of the Amended Complaint and are assumed to be true.  *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

has written a number of articles regarding the alleged use of performance-enhancing drugs in

sports. *Id.* ¶ 8. When Tacopina accused MLB of acting unethically during its investigation of

Rodriguez, Tacopina became a "target" for a vendetta by O'Keeffe and the Daily News. *Id.* ¶

10.

O'Keeffe and other Daily News reporters sought information regarding Tacopina from

former New York City Police Commissioner Bernard Kerik, whom Tacopina defended in a 2006

prosecution by the Bronx District Attorney's Office. *Id.* ¶ 14. In 2013, Kerik filed an ethics

complaint against Tacopina, and O'Keeffe reported Kerik's allegations in the Daily News. *Id.* ¶¶

15-16.

In January 2014, Tacopina sued Kerik, the Daily News, O'Keeffe, and Daily News

reporter Nathaniel Vinton, alleging that they had colluded to defame him. *Id.* ¶ 17. The

complaint asserted that the Daily News and its reporters convinced Kerik that if he filed an ethics

complaint against Tacopina, the allegations, even if false, would be protected by the litigation

privilege. *Id.* The Daily News could then report the allegations without fear of liability. In

April 2014, Tacopina concluded that the Daily News had not colluded with Kerik, and that its

reporting on Kerik's ethics complaint was privileged. *Id.* ¶ 18. Tacopina withdrew his claims

against the Daily News and its reporters, but has continued to press his claims against Kerik. *Id.*

Also in 2014, the Daily News and O'Keeffe "cultivated [a] relationship" with Timothy

Parlatore, a criminal defense attorney. *Id.* ¶¶ 21, 24. Subsequently, on June 3, 2014, Parlatore,

acting as an attorney for Kerik, filed a civil complaint against Tacopina in the Southern District

of New York (the "Kerik Complaint"). *Id*. ¶ 28. The Kerik Complaint alleged, *inter alia*, that

Tacopina had fraudulently misled Kerik into accepting a plea agreement with the Bronx District

Attorney's Office.  *See* Am. Compl., Ex. A ¶ 4.[3]   The Kerik Complaint also alleged that, "[o]n

information and belief, Defendant Tacopina was abusing prescription pain medications, which he

obtained from various physicians."  *Id.*, Ex. A ¶ 104.  That day, the Daily News published a story

written by O'Keeffe, which reported Kerik's allegations.  *Id.*, Ex. B.

### A.  Jane Doe Affirmation

On October 15, 2014, Parlatore, acting as an attorney for an unnamed client identified as

Jane Doe, filed an *ex parte* motion in New York Supreme Court, seeking to restrain Tacopina's

assets.  *Id.* ¶¶ 63, 73.  In his supporting affirmation (the "Jane Doe Affirmation"), Parlatore

alleged that Tacopina had represented Doe in a 2006 civil suit, and that Tacopina had committed

malpractice by failing to disclose his business relationship with the opposing party, and

pressuring Doe into accepting a sub-par settlement.  *Id.*, Ex. S ¶¶ 5, 7.  The affirmation also

stated:

> In the wake of Kerik's [ethics complaint and lawsuit against
> Tacopina], Tacopina has come under public scrutiny for his
> considerable unethical and dubious practices.  These include, but
> are not limited to:
>
> a)  Revelations that Tacopina had an extra-marital affair with
>     the wife of a client;
> b)  Allegations that Tacopina was abusing prescription
>     medication and cocaine, possibly during his failed defense
>     of Melanie McGuire, who was convicted of murdering her
>     husband;
> c)  Revelations that Tacopina had extra-marital affairs with
>     members of the media to further his public relations
>     campaign; . . .

*Id.* Ex. S ¶ 18.  According to the Jane Doe Affirmation, Tacopina was in the process of

purchasing an interest in an Italian soccer team, and had "been very open with the Italian media

---

[3] This Court may consider documents that are attached as exhibits to the Amended Complaint.  *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

about his plan to move his entire family to Italy."  *Id.* ¶ 80; Ex. S ¶¶ 24-25.  Doe therefore sought

a Temporary Restraining Order ("TRO") restraining Tacopina's assets, pending a ruling on

Doe's motion for an order of attachment.  *Id.*, Ex. S ¶ 28.

Prior to filing the Jane Doe Affirmation, Parlatore provided a copy of it to O'Keeffe.  *Id.*

¶ 75.

### B.  The October 15 Article and Editor's Note

At 8:59 p.m. on October 15, 2014, the Daily News published on its website an article

bearing the headline, "Lawsuit against Joe Tacopina seeks to freeze lawyer's assets as he closes

deal to buy Italian soccer club Bologna" (the "October 15 Article").  *Id.* ¶ 49; Ex. N.  The

October 15 Article reported the allegations set forth in the Jane Doe Affirmation, and also

mentioned Kerik's ethics complaint and lawsuit against Tacopina.  The Article contained the

following paragraph:

> Kerik, who is also represented by Parlatore, said in an amended
> complaint filed in June that Tacopina had an extra-marital affair
> with the wife of a client, had affairs with media personalities in
> order to elevate his public profile, and abused painkillers and
> cocaine during his failed defense of Melanie McGuire, who was
> accused of hacking up her husband's body and throwing it in the
> Chesapeake Bay.

*Id.*, Ex. N.  O'Keeffe twice posted links to the October 15 Article on his Twitter feed.  *Id.* ¶ 51.

Parlatore also posted links to the October 15 Article on his personal and business Facebook

pages.  *Id.* ¶ 52.

On October 20, 2014, the Daily News received a copy of the original Complaint in this

action, which alleged that the October 15 Article defamed Tacopina.  *Id.* ¶ 57.  The next day, the

4

Daily News revised the Article.  O'Keeffe Aff., Ex. C.[4]  The paragraph regarding Kerik's

allegations against Tacopina was replaced with the following paragraph:

> Kerik, who is also represented by Parlatore, said in an amended
> complaint filed in June that Tacopina had an extra-marital affair
> with the wife of a client, had affairs with media personalities in
> order to elevate his public profile, and abused painkillers.
> Tacopina, through Burstein, has vigorously denied the allegations.
> In an affirmation filed in support of Jane Doe's request for a
> temporary restraining order, Parlatore also asserted that in the
> wake of Kerik's claims, Tacopina has 'come under public scrutiny'
> for various 'unethical and dubious practices,' including allegations
> that he had abused cocaine.

*Id*.  At the end of the article, the Daily News added an "Editor's Note," which stated:

> Editor's Note: This article has been revised to correct the source of
> the claim that Tacopina abused cocaine. The allegation is
> contained in Parlatore's affirmation filed in the Jane Doe case, not
> in Bernard Kerik's amended complaint as originally stated.

*Id.*

### C.  The October 17 Article

On October 16, 2014, the New York Supreme Court granted an Order to Show Cause in

the Jane Doe Litigation.  Am. Compl. ¶ 63.  The first page of the Order stated: "LET Defendants

or counsel appear and show cause before this Court . . . on the 12th day of November 2014 . . . or

as soon after as counsel may be heard, why an Order should not be made," *inter alia*, enjoining

Tacopina from "dissipating, selling, transferring, or otherwise encumbering any assets which

would render an ultimate judgment impossible to satisfy."  *Id.*, Ex. R.

The Order also stated, in handwriting on the back of the last page, "Appearance by

counsel is optional on return date unless otherwise requested prior to return date."  *Id.*, Ex. R.

---

[4] The Court may consider this document without converting Defendants' motions to dismiss into motions for summary judgment, because Tacopina relied upon the content of the updated article in drafting the Amended Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The next day, October 17, the Daily News published an article with the headline, "Judge orders celebrity attorney Joe Tacopina—now boss of second-division soccer team in Italy—to court" (the "October 17 Article").  *Id.* ¶ 64; Ex. O.  The first line of the article stated:

> A New York judge ordered Joe Tacopina to appear in her court next month to explain why she should not prohibit the brash celebrity attorney from selling or transferring any assets until Tacopina resolves a legal dispute with a former client.

*Id.*, Ex. O.

## DISCUSSION

### I.     Legal Standards

#### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim cannot be granted if the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In ruling on a motion to dismiss, the court "merely . . . assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof."  *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (citation omitted).

#### B.  Defamation

##### 1.  Litigation Privilege

To state a claim for defamation, a plaintiff must establish: (1) a false statement, (2) published without privilege or authorization to a third party, (3) fault by the defendant "as judged by, at a minimum, a negligence standard," and (4) special harm or defamation *per se*.  *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999).  A statement "made in the course of legal

proceedings" is "absolutely privileged if it is at all pertinent to the litigation," and "made in good faith and without malice." *Lacher v. Engel*, 33 A.D.3d 10, 13 (1st Dep't 2006).

### 2.   New York Civil Rights Law § 74

New York Civil Rights Law § 74 prohibits civil actions "against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding."  A publication qualifies for the fair reporting privilege only if it is "substantially accurate." *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (citation omitted).  A "report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* (citation omitted).  The report may not contain statements that, "considered in their context . . . suggest more serious conduct than that actually suggested in the official proceeding." *Sang v. Hai*, 951 F. Supp. 2d 504, 521 (S.D.N.Y. 2013) (citation omitted).

In determining whether the fair reporting privilege applies, "newspaper accounts" are "accorded some degree of liberality." *Holy Spirit Ass'n v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979).  The "language used" in an article "should not be dissected and analyzed with a lexicographer's precision." *Id.*  Nor may "[n]ewspapers . . . be held to a standard of strict accountability for use of legal terms of art in a way that is not precisely or technically correct by every possible definition." *Becher v. Troy Publ'g Co., Inc.*, 183 A.D.2d 230, 234 (3d Dep't 1992).

In certain circumstances, publication of legal documents that have not yet been filed may be protected by the fair reporting privilege.  New York courts have held that statements to the press regarding the litigation position a party intends to take are protected by New York Civil Rights Law § 74, even where the documents containing the position have not yet been filed, so

long as the party ultimately takes that position in the litigation. *See Hudson v. Goldman Sachs &*

*Co., Inc.*, 304 A.D.2d 315, 316 (1st Dep't 2003); *Wenz v. Becker*, 948 F. Supp. 319, 323

(S.D.N.Y. 1996).

### 3.  Abuse of Process

The elements of an abuse of process claim are: "(1) regularly issued process, either civil

or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in

a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116

(1984).  Plaintiffs must also allege special damages. *Brown v. Bethlehem Terrace Assocs.*, 136

A.D.2d 222, 225 (3d Dep't 1988).  New York courts have held that attorneys' fees incurred in

civil litigation do not constitute special damages. *See Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205

(1999) (in malicious prosecution actions, "what is 'special' about special injury is that the

defendant must abide some concrete harm that is considerably more cumbersome than the

physical, psychological or financial demands of defending a lawsuit"); *Recine v. Adler*, 2009

N.Y. Slip Op. 32095(U) (Sup. Ct. Nassau Cty. Sept. 8, 2009) (in abuse of process action, alleged

damages including "expenses incurred in the defense of the legal process issued by defendant"

did not constitute special damages); *Kanciper v. Lato*, 989 F. Supp. 2d 216, 237-38 (E.D.N.Y.

2013) ("As set forth in *Engel*, attorneys' fees and cost associated with defending a lawsuit do not

rise to the level necessary to show special damages") (citation omitted).

## II.    Analysis

### A.  Defamation Claims

Tacopina asserts defamation claims against Parlatore in connection with the Jane Doe

Affirmation and the October 15 Article, and against the Daily News and O'Keeffe in connection

with the October 15 Article, the Editor's Note to the October 15 Article, and the October 17

Article.

### 1.   Jane Doe Affirmation

Tacopina claims that the Jane Doe Affirmation contains two defamatory statements: that

Tacopina was fleeing the United States to avoid creditors, and that he had come under "public

scrutiny for his considerable unethical and dubious practices," which included "[a]llegations that

[he] was abusing . . . cocaine."  Am. Compl. ¶¶ 77, 78, 82.  Tacopina argues that those

allegations fall outside the privilege because "Parlatore provided O'Keeffe with a copy of the

Affirmation before it was filed."  *Id.* ¶ 75.

Assuming this to be true, the allegations in the Jane Doe Affirmation are still privileged

under New York Civil Law § 74.  The Amended Complaint does not allege that the Affirmation

Parlatore provided O'Keeffe was in any way different than the Affirmation that was filed with

the Court.[5]  *See GEM Holdco, LLC v. Changing World Techs., L.P.*, 2014 N.Y. Slip Op.

32298(U) (Sup. Ct. N.Y. Cty. Aug. 28, 2014) (press release issued by defendants announcing

their intent to file counterclaims against plaintiffs for fraud was privileged under § 74, even

though defendants had not yet filed the counterclaims, because "the press release simply

provide[d] a substantially accurate outline of defendants' defenses").[6]  Nor is there any allegation

---

[5] Although Tacopina argues in his Opposition to the Motion to Dismiss that "Parlatore sent O'Keeffe only **drafts** of
the papers ultimately filed with the Court," Opp. Mtn. 2, this is not what the Complaint alleges.  *See* Am. Compl. ¶¶
75, 76 ("Parlatore provided O'Keeffe *a copy* of the Affirmation") (emphasis added).  "[A] complaint cannot be
amended merely by raising new facts and theories in [a plaintiff's] opposition papers."  *Guo v. IBM 401(k) Plus
Plan*, 2015 U.S. Dist. LEXIS 38704, at *30 (S.D.N.Y. Mar. 26, 2015).
[6] Cases applying the fair reporting privilege to documents that have not yet been filed generally involve defendants
publicizing their responses to the allegations against them.  *See, e.g.*, *Hudson*, 304 A.D.2d at 316.  There is little
reason, however, to decline to extend the privilege to Parlatore in this case, where the Amended Complaint alleges
that Parlatore provided O'Keeffe with the actual document that was filed, and does *not* allege that Parlatore
summarized or offered any additional commentary on the litigation.

that the Daily News reported on the Jane Doe Affirmation before it was filed.[7]  In these

circumstances, Parlatore's alleged conduct does not vitiate the fair reporting privilege.

Tacopina also contends that the Jane Doe Affirmation falls within an exception to the fair

reporting privilege, which prohibits an individual from "maliciously institut[ing] a judicial

proceeding alleging false and defamatory charges," and then "circulat[ing] a press release or

other communication based thereon and escape liability by invoking [New York Civil Rights

Law § 74]."  *See Williams v. Williams*, 23 N.Y.2d 592, 599 (1969).  The Amended Complaint,

however, does not allege that the sole purpose of the Jane Doe Affirmation was to defame

Tacopina.  *See Capsolas v. Pasta Res., Inc.*, 2013 U.S. Dist. LEXIS 28508, at *7 (S.D.N.Y. Feb.

25, 2013) ("*Williams* is inapplicable . . . in the absence of any allegations that the . . . action was

brought maliciously and solely for the purpose of later defaming a party"); *Soumayah v.

Minnelli*, 19 A.D.3d 337, 337 (1st Dep't 2005) (citation omitted) ("While litigation may not be

commenced and prosecuted solely as a vehicle and occasion to disseminate false and defamatory

matter, defendants have produced no evidence to support an inference that this litigation has such

a singularly malicious agenda").  Indeed, the Jane Doe litigation is currently ongoing in New

York Supreme Court, and an order to show cause was signed.

### 2.  The October 15 Article and Editor's Note

Tacopina claims that the October 15 Article is defamatory, because it reported that the

Kerik Complaint had alleged that Tacopina "abused painkillers *and cocaine* during his failed

defense of Melanie McGuire," *see* Am. Compl., Ex. N (emphasis added), when in fact, the Kerik

---

[7] In fact, the Affirmation was filed over six hours before the Daily News published the October 15 Article.  *See Doe v. Tacopina*, No. 160100/2014, Dkt. No. 8 (Request for Judicial Intervention, time-stamped 2:15 p.m.); Am. Compl., Ex. N. (October 15 Article time-stamped 8:59 p.m.).  *Cf. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may . . . look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

Complaint alleged only that Tacopina had abused "prescription pain medications."  *See id.*, Ex.

A ¶ 104.  Defendants respond that the October 15 Article is "substantially accurate," because the

allegation regarding cocaine appeared in the Jane Doe Affirmation.  *See id.*, Ex. S ¶ 18

("Tacopina has come under public scrutiny for his considerable unethical and dubious practices,"

including "[a]llegations that Tacopina was abusing prescription medication and cocaine").

Defendants argue that their mistaken attribution to the Kerik Complaint, rather than to the Jane

Doe Affirmation, does not "produce a different effect on a reader than would a report containing

the precise truth."  *Karedes*, 423 F.3d at 119.

The Court agrees.  Whether the allegation regarding cocaine appeared in the Kerik

Complaint or the Jane Doe Affirmation, nonetheless it was made in a publicly filed document.

Moreover, reporting that allegations regarding prescription pain medication and cocaine were

made in a single lawsuit by one former client does not "suggest more serious conduct" than what

actually occurred: those allegations came from two different lawsuits by *two* former clients. *See*

*Sang*, 951 F. Supp. 2d at 521.

Tacopina also argues that the Editor's Note to the October 15 Article is defamatory,

because the sentence, "This article has been revised to correct the source of the claim that

Tacopina abused cocaine," gives the impression that "Kerik—or at least Parlatore—affirmatively

alleged that Tacopina abused cocaine."  Opp. Mtn. (Daily News Defendants) 17.  In fact,

Tacopina argues, the Jane Doe Affirmation merely alleged that Tacopina "came under 'public

scrutiny' for abusing cocaine."  *Id.* at 18.  This is a distinction without a difference.  To

determine that "coming under scrutiny for abusing cocaine" produces a different effect on a

reasonable reader than "abusing cocaine" would require "dissect[ing] and analyz[ing]" the

language of the Article "with a lexicographer's precision."  *Holy Spirit Ass'n*, 49 N.Y.2d at 68.

Moreover, the allegedly defamatory paragraph in the October 15 Article was revised to state, "In an affirmation filed in support of Jane Doe's request for a temporary restraining order, Parlatore also asserted that in the wake of Kerik's claims, Tacopina has *'come under public scrutiny'* for various 'unethical and dubious practices,' including allegations that he had abused cocaine."  Ex. O'Keeffe Aff., Ex. C (emphasis added).  The text of the actual article therefore uses Tacopina's preferred language.

### 3.   The October 17 Article

Tacopina claims that the October 17 Article is defamatory in two ways.  First, the Article stated that Tacopina had been ordered to appear in court in connection with the Doe litigation; the Order to Show Cause, however, stated that Tacopina's counsel could appear in his stead, and in any event, appearance by counsel was "optional on return date unless otherwise requested." Am. Compl. ¶ 65.  Second, the October 17 Article stated that Tacopina had been ordered to show why the Court should not prohibit him "from selling or transferring any assets until Tacopina resolves a legal dispute with a former client," when in reality, the injunctive relief sought was an order restraining the transfer of assets "which would render an ultimate judgment impossible to satisfy." *Id.* ¶ 66.

While the Article is not technically accurate, the Daily News should not be "held to a standard of strict accountability for use of legal terms of art." *Becher*, 183 A.D.2d at 234.  A reporter may be excused for interpreting the phrase "Let Defendants or counsel appear and show cause before this Court" to mean that Tacopina and his attorneys were required to appear.

In addition, the difference between prohibiting the transfer of *any* assets, as stated in the October 17 Article, and prohibiting the transfer of assets which would render an ultimate judgment impossible to satisfy, as stated in the Order to Show Cause, is a minor one.  In the

context of the Article, the language used "does not produce a different effect on a reader than would a report containing the precise truth." *See Karedes*, 423 F.3d at 119.  Indeed, contrary to Tacopina's argument that the October 17 Article creates the inference that "the Court had made a preliminary finding of wrongdoing by Mr. Tacopina," the Article made clear that no liability determination had been made, stating that the Order would prohibit Tacopina from transferring assets "*until [he] resolves* a legal dispute with a former client."  Am. Compl., Ex. O (emphasis added).

### B.  Abuse of Process Claim

Tacopina alleges an abuse of process claim against Parlatore because he "secured the *ex parte* TRO in the Jane Doe case by falsely claiming . . . that there was a danger that giving Mr. Tacopina notice of [the] TRO application would lead to dissipation of assets."  *Id.* ¶ 86.  The abuse of process claim fails, however, because Tacopina has not alleged special damages. Tacopina asserts that he "has been actually damaged by reason of [Parlatore's] abuse of process because of the fees [Tacopina] has incurred and will incur in opposing [Parlatore's] motion in the Jane Doe case."  *Id*. ¶ 98.  Yet attorneys' fees incurred in connection with civil litigation do not constitute special damages.  *See Kanciper*, 989 F. Supp. 2d at 237-38.

In any event, this Court declines to hold that seeking and obtaining a signed TRO from another Court, in connection with litigation that is currently active and pending before that Court, constitutes the "use of the process in a perverted manner to obtain a collateral objective." *Curiano*, 63 N.Y.2d at 116.

### C.  Motion for Sanctions

In addition to moving to dismiss the Amended Complaint, Parlatore moves for sanctions against Tacopina and his attorney, Judd Burstein, for bringing a frivolous lawsuit for an improper

purpose.  The lawsuit was not frivolous.  While the Amended Complaint is dismissed, it is not so

lacking in merit as to warrant the imposition of sanctions.


## CONCLUSION

Defendants' motions to dismiss the Complaint are GRANTED.  Defendant Parlatore's

motion for sanctions is DENIED.  The Clerk is directed to enter judgment and close this case.



Dated:  New York, New York
        September 4, 2015

                                        SO ORDERED

                                        PAUL A. CROTTY
                                        United States District Judge